UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

KRISTEN B. NESTLER,

        Plaintiff,

  -against-

CHARTWELLS DINING
SERVICES and COMPASS
GROUP

        Defendants.

U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

AUG 28 2002

LAWRENCE K. BAERMAN, CLERK
ALBANY

COMPLAINT

02-CV-1115

TJM RFT

### JURY TRIAL IS DEMANDED

Plaintiff, by and through her attorneys, Nestler & Gibson, Attorneys At Law, as and for a complaint against the above named defendants, alleges as follows:

### INTRODUCTORY STATEMENT

1. This is an action for damages sustained by a female citizen of the United States commenced against her former employer, CHARTWELLS DINING SERVICES, and COMPASS GROUP, pursuant to Title VII of the Civil Rights Act of 1964 as amended (42 USC §2000e) and the New York Executive Law § 290 et. seq.

### JURISDICTION

2. This action is brought pursuant to 42 U.S.C. §§ 2000e-2, 2000e-3, and New York Executive Law § 296.

3. The jurisdiction of the Court is predicated on 42 U.S.C. 2000-5 (f) (3), 12133 and 28 U.S.C. 1343 (a) (3) (4).

4. The proper venue of this action is in this Court as Plaintiff was working in and was a resident of this State and the referenced judicial district at the time of the illegal treatment alleged herein.

## PARTIES

5. **KRISTEN B. NESTLER**, the plaintiff herein, is now and at all times material and relevant to this action, was a resident of the State and Northern District of New York and a citizen of the United States.

6. **CHARTWELLS DINING SERVICES**, a defendant herein, is now and at all times material and relevant to this action, was a corporation duly registered and licensed to do business in New York State.

7. **COMPASS GROUP**, a defendant herein, is now and at all times material and relevant to this action, was a corporation duly registered and licensed to do business in New York State.

## FACTUAL ALLEGATIONS

9. Plaintiff, who is a female, was employed by the Defendants as Assistant Director of Marketing, and subsequently as Marketing Project Coordinator, at the University at Albany, from February 5, 2001 until April 29, 2002.

10. Plaintiff was hired and promoted for these positions by her direct supervisor, PAUL KROUSE, the Resident District Manager for Chartwells Dining Services at the University at Albany located in Albany, New York.

11. Beginning in March of 2001, and continuing throughout the remainder of her employment, KROUSE subjected Plaintiff to a regular, frequent, unwanted, uninvited and abusive pattern of sexually charged behavior including, but not limited to, lewd sexual comments, innuendos, propositions, and offensive physical contact.

12. KROUSE's mistreatment of the Plaintiff began in March of 2001, when following a meeting that the two had attended, he responded to an inquiry as to whether he and the Plaintiff were leaving the meeting by remarking "We're going home and going to bed."

13. On several occasions KROUSE used sexually inappropriate language while dealing with the Plaintiff. He frequently used the word "orgasm" in the presence of the Plaintiff as an adjective to describe female co-workers' reactions to different situations that would arise at work, uttering remarks such as "She's going to have an orgasm when she sees this."

14. On or about September 27, 2002, the Plaintiff attended a meeting in KROUSE's office along with a male co-worker, Doug Wolf. During this meeting KROUSE

made the comment "Women are good to work with as long as their - - - - (expletive deleted) don't get in the way." After making this lewd comment, KROUSE turned to the Plaintiff's male co-worker and replied " Look, I made her blush."

15. On or about September 28, 2002, the Plaintiff went to the office of KROUSE'S administrative assistant in order to speak with KROUSE prior to his departing for Maryland. With several co-workers also present in the office, KROUSE told Plaintiff that if she wanted to talk with him she should go back into his office with him while he changed his clothes.

16. On many occasions KROUSE inappropriately expressed to Plaintiff "You're my type."

17. On numerous occasions KROUSE berated the Plaintiff's boyfriend, often in the presence of Plaintiff and several of her co-workers. He did so by making such comments as "Before you marry Dougie, we have to talk," "Dougie is not the one for you," and "When we transfer to another account, Dougie can't come." One evening, while the entire management team for Chartwells Dining Services was out at a public restaurant, Plaintiff got up to go home, remarking that she needed to get some sleep. Upon hearing this, KROUSE commented "If that's all you're going to do, looking like that, then Dougie isn't doing his job."

18. Despite admonishments from the Plaintiff that he act more appropriately toward her, KROUSE continued to sexually harass, verbally abuse and humiliate the Plaintiff. On or about February 8, 2002, the Plaintiff attended a meeting in KROUSE's office along with several of her co-workers. After excusing her from the meeting, KROUSE stopped the meeting as Plaintiff was leaving the room, walked over to where the Plaintiff was standing, and cut a small piece of string off the shoulder of Plaintiff's suit.

19. On or about February 11, 2002, the Plaintiff was using the telephone in KROUSE's office when KROUSE came up on her from behind and hugged her. Despite being admonished by the Plaintiff for this conduct, on February 19, 2002, KROUSE again came up on the Plaintiff from behind and hugged her.

20. Despite the fact that KROUSE was fully aware that the Plaintiff had a boyfriend, on February 14, 2002, Valentine's Day, he asked her if she would go out to dinner with him. Plaintiff rebuffed this overture, explaining again that she had a boyfriend. Notwithstanding this, later that same day KROUSE called the Plaintiff to his office on the pretense of business, and again asked her if she would go out to dinner with him that night.

21. Upon information and belief, on or about February 21, 2002, KROUSE was engaged in conversation with Ralph Lembo, a manager for Chartwells Dining Services. During the course of that conversation, he brought up the Plaintiff and

started talking about her body parts. This conversation led to talk of KROUSE hoping to get the Plaintiff alone in his car with him.

22. On or about February 26, 2002, the Plaintiff attended a meeting with KROUSE, a co-worker and members of a construction company to discuss improvements on the Burger King restaurant located at the University. During the course of that meeting it was determined that certain menu panels had to be removed. This required someone to climb up on a twelve foot step ladder to take them down. Noticing that the plaintiff was wearing a skirt, KROUSE insisted that she be the one to climb up on the step ladder. When the Plaintiff refused, KROUSE mused "Don't worry about your skirt. It's only us here, its long enough."

23. On or about February 28, 2002, KROUSE asked the Plaintiff to retrieve a file for him and bring it to his office. When the Plaintiff brought the file to him, KROUSE took it, said "thanks" and slapped Plaintiff on the rear end with it.

24. On or about February 28, 2002, at a managers meeting, KROUSE deliberately sat and otherwise positioned himself directly in front of the Plaintiff, so that his crotch was at her eye level. Cheri Domanico, Chartwells' Quality Assurance Manager, approached the Plaintiff regarding this awkward situation and commented to her that it was clear how uncomfortable she looked during the meeting. During the same meeting, KROUSE poked the Plaintiff in her crotch area in order to get her attention.

25. On or about March 5, 2002, Plaintiff and KROUSE were loading materials into her car for a presentation which was to be given later that evening. While placing an item in the car, KROUSE abruptly stated "You could be my wife." A brief time later he added "Well, not my wife. But, you could have my second born." When the Plaintiff confronted KROUSE regarding these grossly inappropriate comments, he continued to harass her by stating " OK, you can have Ralph's too."

26. The Plaintiff endured KROUSE'S abuse and mistreatment for more than a year because she needed the income and career experience provided by CHARTWELLS DINING SERVICES and COMPASS GROUP. The career opportunity offered to the Plaintiff by CHARTWELLS DINING SERVICES and COMPASS GROUP was very promising, especially considering the fact that she was twenty-two years old and had only recently graduated from college when she was hired. This experience has left Plaintiff traumatized about re-entering the workforce and further pursuing her career. Although she repeatedly complained to KROUSE about his unprofessional conduct, mistreatment and inappropriate sexual advances, he continued to sexually harass Plaintiff on a daily basis.

27. CHARTWELLS DINING SERVICES and COMPASS GROUP, had an ineffective anti-harassment or anti-discrimination policy or procedure. When Plaintiff utilized the procedure in place, she was threatened by Jim Nichols, a Director of Human Resources for Compass Group, North American Division,

who told her at a meeting on March 27, 2002, that "There are other ways you could take this but things don't always go as one might think they will. If you think this was tough, any other route you may pursue, such as taking means outside the company, will be much tougher."

28. The aforesaid pattern of harassment demeaned Plaintiff both personally and professionally, caused her mental anguish, anxiety and humiliation, caused her physical and emotional injury (including loss of self-esteem and loss of enjoyment of life), and resulted in a loss of benefits and income.

29. Defendants CHARTWELLS DINING SERVICES and COMPASS GROUP, were aware of the harassment and unwelcomed sexual advances of KROUSE by virtue of the fact that KROUSE was the Plaintiff's direct supervisor, and by virtue of the fact that the Plaintiff made a formal complaint to KROUSE's supervisor. Notwithstanding this complaint, the defendants did nothing to stop this abusive behavior or to adequately admonish KROUSE for his illegal conduct.

30. Plaintiff has satisfied all of the procedural and administrative requirements set forth in 42 U.S.C. § 2000e-5, in particular:

    a. Plaintiff filed a timely written charge of sexual harassment with the Equal Employment Opportunity Commission on or about May 10, 2002.

      b.      Plaintiff received a "Notice of Right to Sue" from EEOC dated July 29, 2002.

      c.      The complaint in this matter was filed within 90 days following the receipt of the "Notice of Right to Sue."

31.    Defendants CHARTWELLS DINING SERVICES and COMPASS GROUP knew of the sexual harassment to which Plaintiff was subjected.

32.    By failing to take action to halt KROUSE's sexual harassment of Plaintiff and by failing to take appropriate disciplinary action, CHARTWELLS DINING SERVICES and COMPASS GROUP, accepted, ratified, condoned and promoted the sexual harassment to which Plaintiff was subjected.

33.    The aforesaid acts and omissions by the named Defendants harassed, annoyed and abused Plaintiff based upon her gender in violation of Title VII (42 U.S.C. § 2000e-2), and disrupted her work environment.

34.    The hostile work environment was sufficiently severe and pervasive such that it altered the condition of Plaintiff's employment and affected the terms, conditions and privileges thereof in violation of Title VII.

35. Plaintiff has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

36. As a result of the aforementioned acts and omissions by the Defendant's, Plaintiff is entitled to recover actual, compensatory damages for loss of income and personal and emotional injury in the sum of Seven Hundred and Fifty Thousand Dollars ($750,000.00) and punitive damages in the sum of One Million Dollars ($1,000,000.00)

37. Plaintiff has and is expected to incur attorneys fees in this action for which she seeks judgment pursuant to 42 U.S.C. § 1988.

### AS AND FOR A CLAIM AGAINST CHARTWELLS DINING SERVICES AND COMPASS GROUP.

38. Plaintiff repeats and realleges paragraphs 1 through 37 with the same force and effect as if those allegations were fully set forth herein again.

39. Plaintiff invokes this Court's pendant jurisdiction pursuant to Rule 18(a) of the Federal Rules of Civil Procedure to hear and adjudicate claims arising out of the transactions set forth above that violate rights and duties established by the law of the State of New York.

40. The treatment of the Plaintiff by the Defendants constituted an unlawful discriminatory practice as defined by New York Executive Law Article 15 § 296.

41. As a result of said treatment, Plaintiff has sustained damages, losses and injuries for which she claims judgment in the sum of Seven Hundred and Fifty Thousand Dollars ($750,000.00).

42. In addition, the aforementioned harassment of Plaintiff, being willful, wanton and reckless, warrants an award of punitive damages in an amount not less than One Million Dollars ($1,000,000.00).

**WHEREFORE**, Plaintiff prays for the following relief:

   a. Judgment against CHARTWELLS DINING SERVICES and COMPASS GROUP to compensate, reimburse, and make whole the Plaintiff for all the benefits Plaintiff would have received had it not been for the Defendants' illegal action, including but not limited to pay, benefits, training, promotions, and seniority, and that Plaintiff be compensated for all damages emanating from the discrimination of the Defendants.

   b. Judgment for an award of actual damages to compensate her for the pain and suffering, humiliation and loss of enjoyment of life caused by Defendant's unlawful treatment as follows:

      (1) On the first claim, actual, compensatory and punitive damages in the sum

of seven hundred and fifty thousand dollars ($750,000.00)

(2) On the second claim, actual, compensatory and punitive damages in the sum of seven hundred and fifty thousand dollars ($750,000.00)

c. Judgment for punitive damages assessed against the Defendants jointly and severally in the sum of One Million Dollars ($1,000,000.00), and

d. Judgment awarding payment of costs and expenses of this action including an award of reasonable attorney's fees as provided in 42 U.S.C. §§ 1988 and 2000e-5(k).

Dated: August 28, 2002

_____
ROBERT M. GIBSON, ESQ.
Federal Bar Roll No. 511348

Nestler & Gibson, Attorneys At Law
3 Computer Drive West-Suite 120
Albany, New York 12205
(518)-438-3620
Attorneys for Plaintiff